## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FIRST LOOK INSTITUTE, INC., and

SHARON LERNER;

Plaintiffs,

-against-

NATIONAL INSTITUTES OF HEALTH,

Defendant.

Case No. 21 Civ. 4024

**COMPLAINT**

Plaintiffs First Look Institute, Inc. ("FLI"), publisher of *The Intercept*, and Sharon Lerner, an employee of FLI (collectively "The Intercept"), by and through their attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, for their complaint alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq., by FLI—a non-profit American news organization that seeks to provide the public with original, independent journalism concerning the institutions and individuals responsible for shaping our world—and its reporter, Sharon Lerner. The Intercept brings this action for injunctive and other appropriate relief, seeking the release of agency records from the National Institutes of Health (NIH), an organization within the Department of Health and Human Services ("DHS").

2.      Through this action, The Intercept seeks to compel the NIH to disclose records demonstrative of funding it provided to virologist Dr. Peter Daszak to study the emergence of zoonotic diseases such as Sars-CoV-2, the virus responsible for the COVID-19 pandemic. This information is crucial to the public's understanding of U.S. and international efforts to

conclusively determine the origins of SARS-CoV-2. Accurate information about how the virus

acquired the ability to infect humans is crucial to understand the current pandemic as well as

inform efforts to prevent future pandemics. The public has an indelible interest in both.

3.      According to press reports, Dr. Daszak is the sole U.S. scientist on the World

Health Organization (WHO) team investigating the origins of the virus. The panel's

investigatory efforts have come under increasing scrutiny due to China's limited cooperation

with the investigation and, importantly, conflicts of interest of many of the investigators,

including Dr. Daszak.[1] Media reports indicate that Dr. Daszak has deep, longstanding ties to the

Wuhan Institute of Virology (WIV), a Chinese research facility central to questions about the

origin of the pandemic.

4.      One theory of the virus' origin is that it originated from WIV, which the U.S.

government accused of conducting controversial "gain of function" experiments that may have

given bat coronaviruses the ability to infect humans.[2] U.S. officials have also alleged that WIV

lacked adequate safety precautions and suffered an outbreak of COVID-19-like symptoms

among its researchers in fall 2019, shortly before the world's first COVID-19 cases were

---

[1] *See, e.g., Wall Street Journal* Editorial Board, "Who Are the Covid Investigators?" (Feb. 15, 2021) https://www.wsj.com/articles/who-are-the-covid-investigators-11613401955; Colin D. Butler, et al., "Open Letter: Call for a Full and Unrestricted International Forensic Investigation into The Origins of COVID-19" (Mar. 4, 2021) https://s.wsj.net/public/resources/documents/COVID%20OPEN%20LETTER%20FINAL%20030421%20(1).pdf.

[2] *Wall Street Journal* Editorial Board, *supra,* n. 1; U.S. State Department internal cables from Beijing Embassy to Washington, D.C., "China Opens First Bio Safety Level 4 Laboratory", (Jan. 19, 2018) available at: https://context-cdn.washingtonpost.com/notes/prod/default/documents/109d57ba-42dd-4215-9f4e-39d068ceed31/note/4f90a905-2b3f-44e0-8cb5-2d9ea5dfc62a.#page=1; Josh Rogin, "In 2018, Diplomats Warned of Risky Coronavirus Experiments in A Wuhan Lab. No One Listened." *Axios,* (Mar. 8, 2021) https://www.politico.com/news/magazine/2021/03/08/josh-rogin-chaos-under-heaven-wuhan-lab-book-excerpt-474322; Yuan Yang and Christian Shepherd, "WHO Investigators Probe Wuhan Virology Lab", *Financial Times*, (Feb. 3, 2021) https://www.ft.com/content/8a28b91b-d98f-414d-a6c0-92f2346af1df.

reported in Wuhan.[3] The WHO investigation team is seeking to evaluate the veracity of these

claims.[4] Dr. Daszak's apparent conflicts of interest may inhibit the team's ability to do so.

5.      Dr. Daszak's non-profit, EcoHealth Alliance, received a $7.5 million grant from

the NIH to study the process by which bat coronaviruses gain the ability to infect humans in

partnership with WIV.[5] Dr. Daszak also signed a public statement "strongly condemn[ing] the

theory that the virus originated at WIV as a dangerous "conspiracy theor[y]" likely to "jeopardise

[sic] our global fight against this virus."[6] The public is entitled to know whether Dr. Daszak's

deep, ongoing ties to WIV and stated views about the origins of COVID-19 create conflicts of

interest that may cast doubt on Dr. Daszak's—and consequently, the WHO team's—ability to

impartially investigate the outbreak.

6.      NIH-funded research, in part, gives rise to the appearance of Dr. Daszak's

conflicts of interest capable of impeding his ability to adequately investigate the origins of the

pandemic. These apparent conflicts of interest engendered widely-reported criticism from the

scientific community and U.S. government, who casted doubt on the accuracy and integrity of

---

[3] Id.

[4] Yang and Shepherd, *supra* n. 2.

[5] Helen Branswell, "NIH Awards $7.5 Million Grant to EcoHealth Alliance, Months After Uproar over Political Interference", *StatNews* (Aug. 27, 2020) https://www.statnews.com/2020/08/27/nih-awards-grant-to-ecohealth-alliance-months-after-uproar-over-political-interference/; Nidhi Subbaraman, " 'Heinous!': Coronavirus Researcher Shut Down for Wuhan-lab Link Slams New Funding Restrictions", *Nature* (Aug. 21, 2020) https://www.nature.com/articles/d41586-020-02473-4.

[6] Charles Calisher, et al., "Statement in Support of The Scientists, Public Health Professionals, and Medical Professionals of China Combatting COVID-19," *The Lancet* (Feb. 18, 2020) https://www.thelancet.com/action/showPdf?pii=S0140-6736(20)30418-9.

the WHO investigation.[7] In part due to this backlash, WHO abandoned efforts to release an

interim report on its findings thus far.[8]

7.      COVID-19 has plunged the global economy into recession and sickened 150

million people worldwide, more than 3 million of whom passed away.[9] The devastation wrought

by COVID-19 underscores the need to understand the origins of the virus so that the U.S. and

other governments and private institutions can most effectively prevent the next pandemic. For

example, it will shed light on whether government spending on high-level biosafety labs money

is well spent, or if it would be better spent on other pandemic-prevention efforts.[10]

8.      The public has a strong interest in understanding the origins of the outbreak and

how NIH funding decisions may impede their access to such information. Likewise, the public

has an interest in learning what, if anything, the NIH knew about Dr. Daszak's involvement with

WIV activities that may have contributed to the pandemic.

9.      On September 3, 2020, *The Intercept* reporter Sharon Lerner submitted a FOIA

request ("the Request") to the NIH that went to the heart of the public health matters described

above. The NIH did not substantively respond to the request until December 18, 2020, when the

agency denied it in full. The Intercept filed an administrative appeal challenging this denial on

December 26, 2020. NIH failed to respond to The Intercept's administrative appeal within the

---

[7] Betsy McKay, et al., "WHO Investigators to Scrap Plans for Interim Report on Probe of Covid-19 Origins", (Mar. 5, 2021) https://www.wsj.com/articles/who-investigators-to-scrap-interim-report-on-probe-of-covid-19-origins-11614865067?mod=hp_lead_pos5.

[8] Id.

[9] Coronavirus World Map: Tracking the Global Outbreak, *N.Y. Times*, last updated April 29, 2021 https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html.

[10] Fabian Koh, "Budget Debate: $90 to Be Spent on Singapore's First Top-Level Biosafety Lab, to Be Operational by 2025", *The Straights Times*, (Mar. 1, 2021) https://www.straitstimes.com/singapore/politics/90-million-to-be-spent-on-singapores-first-top-level-biosafety-lab-to-be.

statutory 20 business-day time limit for an agency to respond to an administrative appeal. With

this case, The Intercept seeks to vindicate their rights and the public's rights to government

transparency under FOIA.

**PARTIES**

10.      Plaintiff First Look Institute, Inc. ("FLI") is a not-for-profit American news

organization headquartered at 114 5th Avenue, New York, NY 10011. FLI owns and operates

several journalistic outlets, including *The Intercept*, an award-winning, nationally recognized

news organization with a reputation for holding power to account. The Intercept's in-depth

investigations focus on politics, war, surveillance, corruption, the environment, science,

technology, criminal justice, and the media.

11.      Plaintiff Sharon Lerner is a distinguished investigative reporter for *The Intercept*

currently covering the environment and health. Her work has also appeared in other publications,

including the *New York Times*, *The Nation*, and the *Washington Post*. She has won numerous

awards for her journalism, including from the Newswoman's Club of New York, the Society for

Environmental Journalism, and the American Public Health Association.  She submitted the

Request on behalf of and an agent for FLI in her capacity as a staff investigative reporter.  FLI

and Lerner (together, The Intercept) accordingly jointly bring this suit to obtain the records in

question.

12.      Defendant NIH is an agency of the federal government that has possession,

custody, and/or control of the records that The Intercept seeks. NIH is headquartered at 9000

Rockville Pike, Bethesda, Maryland, 20892. "NIH is the steward of medical and behavioral

research for the nation."[11] It invests roughly $41.7 billion in medical research each year.[12] As of

2018, NIH was the world's largest funder of medical research.[13]

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action and personal

jurisdiction over the Department of Commerce pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §

552(a)(4)(B).

14.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

15.     Plaintiffs are deemed to have exhausted all its administrative remedies pursuant to

5 U.S.C. § 552(a)(6)(C) because the NIH has failed to respond to within the statutorily mandated

time limit of twenty working days after receipt of an administrative appeal. 5 U.S.C. §§ 552

(a)(6)(C)(i).

## FACTS

16.     FOIA "focuses on the citizens' right to be informed about 'what their government

is up to,'" by fostering the release of "[o]fficial information that sheds light on an agency's

performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489

U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant

objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8

(2001) (internal quotation marks and citations omitted).

---

[11] National Institutes of Health, "About the NIH" (Jul. 7, 2015), https://www.nih.gov/about-nih/what-we-do/nih-almanac/about-nih#:~:text=NIH%20is%20the%20steward%20of,and%20reduce%20illness%20and%20disability.

[12] National Institutes of Health, "Budget" (Jun. 29, 2020), https://www.nih.gov/about-nih/what-we-do/budget.

[13] Robin Seaton Jefferson, "How The Largest Funder of Biomedical Research in The World Spends Your Money," *Forbes*, (Dec. 21, 2018), https://www.forbes.com/sites/robinseatonjefferson/2018/12/21/how-the-largest-public-funder-of-biomedical-research-in-the-world-spends-your-money/?sh=1b59c07827b9.

17.     The Intercept, like other news organizations, plays a critical role in providing information to citizens about "what their government is up to." Indeed, the First Amendment's guarantee of freedom of the press is meant to enable journalists to play an "essential role in our democracy," to "bare the secrets of government and inform the people." *New York Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring).

18.     Through the FOIA request at issue in this case, The Intercept seeks to fulfill its journalistic function and shine a public light on NIH funding that creates an apparent conflict of interest for the sole U.S. researcher on the WHO team assembled to investigate the origins of COVID-19.

## I.   The Request

19.     On September 3, 2020, *The Intercept*'s investigative reporter Sharon Lerner submitted the Request to the NIH by email via iFOIA.org. A true and correct copy of this request is attached hereto as Exhibit A. The Request was for "access to and copies of proposals for and all written communications relating to" 32 specifically enumerated grants to Dr. Daszak and Ecohealth Alliance, Inc. to study zoonotic diseases. A full list of the grants appears in the Request, attached as Exhibit A.

20.     Gorka Garcia-Malene, a Freedom of Information Officer for the NIH, acknowledged Ms. Lerner's request and denied her request for expedited processing on September 17, 2020. A true and correct copy of this letter is attached as Exhibit B. The letter summarily concluded that Ms. Lerner's request, did "not meet the standards of 'compelling need,'" despite that Ms. Lerner is "a person primarily engage in disseminating information" and the ongoing pandemic generated "urgency to inform the public concerning actual or alleged Federal Government activity[,]" a "compelling need" standard set forth by the D.C. Circuit and quoted in the NIH's response letter. Ex. B p. 3.

21.     The NIH's expedited processing denial letter promised to "do everything possible to comply with [The Intercept's] request in a timely manner." Ex. B.

22.     FOIA requires the NIH to respond in 20 working days — not "in a timely manner." 5 U.S.C. § 552 (a)(6)(A)(i).

23.     No provision of the statute gives an agencies carte blanche to set its own amorphous, vague deadlines designed to give itself latitude to respond to requests at its convenience.

24.     The NIH never notified The Intercept that "unusual circumstances" warranted delay past the ordinary 20-day deadline.

25.     NIH did not ask Ms. Lerner to narrow her request—nor would it have been reasonable to do so. Ms. Lerner's request articulated the exact grant and related communications she sought, including the agency, year, name, grant recipient, and for most items, size of the grant in dollars. This level of detail tailored the Request to target a limited number of documents, directing NIH to the exact documents sought.

## II.    The Denial

26.     NIH provided no determination—intermediate or final—on this request, nor any indication of when it would do so, until First Look's counsel made several follow-ups attempts on December 15 and 17, more than 100 days after Ms. Lerner filed the request.

27.     On December 18, NIH FOIA Officer Gorka Garcia-Malene sent Ms. Lerner a letter denying her request in full pursuant to Title 5 U.S.C. § 552 (b)(7)(A) ("Exemption 7A") and 45 C.F.R. § 5.31 (g)(1), both of which authorize agencies to withhold "records or information compiled for law enforcement purposes" that "[c]ould reasonably be expected to interfere with enforcement proceedings[.]" A true and correct copy of this letter is attached hereto as Exhibit C.

28.      It its letter, the NIH summarily claimed that this exemption applied because the requested records "involve pending investigations." Ex. C. The denial letter never claimed that the requested documents were compiled for law enforcement purposes. To the contrary, common-sense would dictate that the grant proposals were created pursuant to the process of funding scientific research, rather than pursuant to a law enforcement investigation.  Moreover, the Request sought individual records, not any investigatory file that may exist. Exemption 7A therefore does not apply to the requested records.

29.      In the denial letter, the NIH did not claim that or explain why "disclosure would harm an interest protected by an exemption" as required by 5 U.S.C. § 552 (a)(8)(A). Because the NIH did not articulate specific reasons why disclosure would result in harm to an investigation, Exemption 7A does not apply.

## III.   The Appeal

30.      Plaintiff, by and through the counsel, filed an administrative appeal of NIH's denial on December 26, 2020. A true and correct copy of this appeal letter is attached hereto as Exhibit D. The appeal argued that the requested records were not shielded from disclosure by Exemption 7A, and thus must be produced.

31.      FOIA required Defendant Agency to respond within 20 working-days. 5 U.S.C. § 552 (a)(6)(A)(ii). This appeal was due on or about January 28, 2021. The NIH did not respond to the appeal by this date, and, as a result, constructively denied it. This exhausted FLI's administrative remedies, rendering this civil complaint ripe for review. 5 U.S.C. § 552 (a)(6)(C)(i).

32.      To date, NIH has not responded to the appeal.

9

**FIRST CAUSE OF ACTION**
(Violation of FOIA for failure to release responsive records)

33.     Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing

paragraphs as though fully set forth herein.

34.     The NIH is an agency subject to FOIA, 5 U.S.C. § 552(f), and therefore had an

obligation to release responsive records not subject to a specific exemption.

35.     The NIH's denial of The Intercept's entire FOIA request in reliance on a plainly

inapplicable exemption, 5 U.S.C. § 552 (b)(7)(A), demonstrates that the Defendant agency

violated FOIA, 5 U.S.C. § 552(a)(3), by failing to disclose all responsive records in its

possession at the time of the Request without providing a lawful reason for withholding any

records as to which it is claimed an exemption.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     Declare that the records sought by the Request, as more particularly described

above and in Exhibit A, are public records pursuant to 5 U.S.C. § 552, that the

NIH improperly withheld the documents pursuant to 5 U.S.C. § 552(b)(7)(A), that

Exemption 7A does not apply, and that the records must be disclosed;

b.     Order the NIH to provide those records to Plaintiffs, including electronic copies

of records stored in electronic format, within 20 business days of the Court's

order;

c.     Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees,

as authorized by FOIA; and

d.     Grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 5, 2021

                    EMERY CELLI BRINCKERHOFF ABADY
                    WARD & MAAZEL LLP

                    By:      /s/*Debra Greenberger*

                    Andrew G. Celli, Jr.
                    Debra L. Greenberger
                    600 Fifth Avenue, 10th Floor
                    New York, New York 10020
                    (212) 763-5000

                    FIRST LOOK INSTITUTE, INC.
                    David S. Bralow
                    Victoria J. Noble*
                    114 5th Ave
                    New York, NY 10011-5604

                    *Attorneys for Plaintiffs*

*\* Application for pro hac vice admission to be submitted.*