# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER
VIVAKE PRASAD
NOEL R. LEÓN
NAIRUBY L. BECKLES
FRANCESCA COCUZZA

December 1, 2021

*Via ECF*

Honorable Gregory H. Woods
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

      Re: *First Look Institute, Inc., et al v. National Institutes of Health*,
           No. 21 Civ. 04024 (GHW)

Your Honor:

      Pursuant to this Court's August 31, 2021 Order (Dkt. 29) all parties write jointly to update this Court on the status of the parties' efforts to narrow the pool of "other communications" related to the grant proposals. Following the joint section, the parties each propose next steps based on the outcomes of their discussions.

      Over the course of several months, the parties reduced the pool of communications from approximately 11,000 pages to approximately 2,100 pages in two ways: Plaintiffs narrowed their request for grant-related communications to just those communications pertaining to the seven high-priority grant proposals.[1] Defendant eliminated many non-responsive and duplicate records.

      Plaintiffs proposed numerous other methods by which to narrow the pool of communications of 2,100 pages further, including by specific date ranges, senders and recipients, and keywords. Unfortunately, NIH is incapable of further narrowing the pool of

---

[1] The high-priority grant proposals are those pertaining to those bearing the Federal Award Identification Numbers ("FAIN") U01AI151797 and R01AI110964.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 2

communications in any of these ways. Once the documents are loaded into the review software, NIH can only sort by date in either ascending or descending order and narrow by grant number.

**Plaintiffs' Position**

Despite Plaintiff's best efforts to narrow their request for communications, the current schedule of 300 pages per month will result in an overly-long production schedule due to Defendant's inability to search the records in almost all of the ways Plaintiffs proposed. That schedule was premised on Defendant's stated willing to use search terms to narrow the pool of potential documents, so that Plaintiffs would receive the relevant documents relatively quickly. Given Defendant's inability to narrow the pool of communications—despite proposing that Plaintiffs be required to do so—combined with the even greater newsworthiness of these records, Plaintiffs respectfully request that the Court order NIH to produce communications for the high-priority grants at a rate of 600 pages per month.

During the August 30, 2021 conference, Defendant proposed using the very search tools it now states it cannot use to support its proposed 300 pages per month production schedule, arguing that with a narrowed pool of communications Plaintiffs would receive all relevant communications in a reasonable period. Specifically, Defendant advocated for "using some degree of search terms, in addition to the grant number search term that NIH has already used, to bring down the number of pages of these other communications documents." Ex. A (Aug. 30, 2021 Confr. Tr.) at 5. The Court adopted this suggestion, instructing Plaintiffs to "work with the government to focus their requests, understanding that an unfocused request with a baseline of 11,000 emails will lead to a later completion of production than a much more focused request." *Id.* at 12. Pursuant to the Court's order, Plaintiffs spent considerable time attempting to determine which communications were most likely to contain useful information. The NIH encouraged Plaintiffs' efforts. For example, after Plaintiffs proposed limiting the request to emails with NIH officials holding specific titles and members of certain committees, NIH requested a list of the names of such people. Plaintiffs consulted multiple experts to compile that list, only to learn several weeks later that NIH lacked the ability to search by sender or recipient altogether.

After doing significant work to determine which records would be most useful, Plaintiffs will now have to wait months for newsworthy information while NIH processes documents Plaintiffs anticipate will contain little to nothing of value. Similarly, important communications will likely be delayed by records that Plaintiffs *already have.* For example, NIH refused to remove 378 pages produced to a different FOIA requester and shared with Plaintiffs from the pool of communications it is producing at 300 pages per month.

While NIH claims that the parties made "substantial progress" by reducing the number of pages from 11,000 to 2,100, roughly half of the records removed were those that Defendants identified as non-responsive or duplicative. *This is false progress*. Given that the Court ordered Defendant to produce rather than process 300 pages per month, these records would have been removed as non-responsive/duplicates in processing, and thus would not have counted towards NIH's production obligations. These records would not have delayed the production of responsive records whatsoever.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 3

Finally, increasing the rate of production is additionally appropriate because these records are even more newsworthy now than they were in late August. The high-priority grant proposals show that EcoHealth Alliance engineered bat coronaviruses to make them capable of infecting humans using federal funding.[2]  On October 20, 2021, NIH Principal Deputy Director Lawrence A. Tabak claimed in a letter to Representative James Comer that EcoHealth Alliance violated the terms of its grant by not reporting the findings of an experiment on a bat coronavirus which indicated that the virus had acquired the ability to infect humans.[3] EcoHealth Alliance denied violating grant terms.[4]

As reporters unaffiliated with *The Intercept* have pointed out, what NIH knew about the research conducted under these grants—and when it knew it—would allow the public to evaluate the truth of Anthony Fauci's claim to Congress that NIH never funded so-called "gain-of-function" research at the Wuhan Institute of Virology.[5] Release of communications that may exonerate Fauci is of immense public interest because the efficacy of key public health initiatives against Covid-19—particularly vaccines and boosters—depend in part on the public's willingness to believe Fauci.

Moreover, the communications are likely to contain additional information that would inform public debate on whether stricter rules are needed to protect the public from the unintended consequences of risky virology research.  For example, NIH communications (received from other sources) demonstrate that when NIH officials learned that EcoHealth Alliance planned to engineer coronaviruses to make them more infectious—which would violate the NIH's funding moratorium on gain-of-function—NIH permitted EcoHealth Alliance to evade that moratorium.[6]  The NIH allowed EcoHealth Alliance to proceed with the risky experiments under safety rules EcoHealth Alliance drafted—which NIH later accused EcoHealth Alliance of violating—rather than enforcing the NIH's written policies.[7] Because risky virology experiments

---

[2] *See, e.g.,* Sharon Lerner & Mara Hvistendahl, "New Details Emerge about Coronavirus Research at Chinese Lab, The Intercept (Sept. 6, 2021), https://theintercept.com/2021/09/06/new-details-emerge-about-coronavirus-research-at-chinese-lab/; Sharon Lerner, et al., "NIH Documents Produce New Evidence U.S. Funded Gain-of-Function Research in Wuhan," The Intercept (Sept. 9, 2021), https://theintercept.com/2021/09/09/covid-origins-gain-of-function-research/; Sharon Lerner & Maia Hibbett, "Ecohealth Alliance Conducted Risky Experiments on MERS Virus in China," The Intercept (Oct. 21, 2021), https://theintercept.com/2021/10/21/virus-mers-wuhan-experiments/.

[3] Lawrence A. Tabek, Principal Director, National Institutes of Health, to Rep. James Comer, U.S. House of Representatives (Oct. 20, 2021) *in* Tweet, Oversight Committee Republicans (@GOPOversight) (Oct. 20, 2021) https://twitter.com/GOPoversight/status/1450934193177903105.

[4] Joel Achenbach, "NIH Demands Unpublished Data on Coronavirus Experiment, but Says Research Is Not Linked to The Pandemic," Wash. Post (Oct. 21, 2021), https://www.washingtonpost.com/health/2021/10/21/nih-ecohealth-alliance-coronavirus/.

[5] *See, e.g.,* Katherine Eban, "In Major Shift, NIH Admits Funding Risky Virus Research in Wuhan," Vanity Fair (Oct. 22, 2021), https://www.vanityfair.com/news/2021/10/nih-admits-funding-risky-virus-research-in-wuhan.

[6] Sharon Lerner & Mara Hvistendahl, "NIH Officials Worked with EcoHealth Alliance to Evade Restrictions on Coronavirus Experiments," The Intercept (Nov. 3, 2021), https://theintercept.com/2021/11/03/coronavirus-research-ecohealth-nih-emails/.

[7] *Id.*

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 4

conducted without adequate biosafety precautions could cause the next pandemic, this information is of the utmost public concern.

Given the demonstrably heightened public interest in these records and NIH's inability to narrow Plaintiff's request, an order requiring the agency to produce them at a rate of 600 pages per month is appropriate.

**Defendant's Position**

By way of background, on July 26, 2021, and August 30, 2021, the Court held conferences in order to set a production schedule for documents in this FOIA action. At the July 26 conference, the Court ordered NIH to produce the "high priority" grants by September 3, 2021. At the August 30 conference, it ordered NIH to produce the "non-priority" grants by November 15, 2021, and that, thereafter, NIH produce communications related to these grants at a rate of 300 pages per month with those productions to commence on December 15, 2021.

NIH has met every Court-ordered deadline in this litigation. It is also confident that it will be able to continue to meet the Court-ordered deadlines with respect to the production of documents moving forward if the Court maintains the current processing rate, as set forth in its August 31, 2021, order. *See* Dkt. No. 29.

As explained in the Declaration of Gorka Garcia-Malene, *see* Dkt. No. 22-1, NIH is unable to process records at a faster rate in light of the current burdens on NIH's FOIA program and the agency more broadly. While a supplemental declaration can be provided if necessary, NIH would attest to the fact that its FOIA burdens have only increased since it submitted this declaration—the number of FOIA requests in litigation have increased while NIH continues to work to increase its staff, and there remain hundreds of backlogged FOIA requests as a result of the pandemic and despite the agency's best efforts. As Plaintiffs themselves make clear, there are many other FOIA requesters also pursuing what they believe to be newsworthy information—so much so that Plaintiffs are seemingly receiving documents from these other FOIA requesters.

As noted by Plaintiffs, the parties have made significant progress in narrowing the pool of documents that must be produced moving forward. When the Court initially ordered a production rate of 300 pages per month, the parties had informed it that there were approximately 11,000 pages of documents at issue. While the parties represented that they would use their best efforts to reduce that figure, nonetheless, the production rate was entered knowing full well that the production could take many months (if not years). As Plaintiffs state, the parties worked together to narrow the number of responsive documents such that there are

now approximately 2,100[8] pages of documents to produce.[9] Plaintiffs are correct that NIH is unable to prioritize the documents in the way that they seek. Instead, NIH is able to produce documents sorted by grant in chronological (or reverse chronological) order, and NIH can coordinate with Plaintiffs with respect to how they wish to proceed using that sorting capability.

Accordingly, consistent with the current Court-ordered processing rate, this production will be complete within approximately seven months. Such a timeline is common in FOIA actions, including actions where plaintiff claims great public interest in the subject matter. For example, in *New York Times Co. v. Dep't of Ed.*, No. 19-cv-693 (LTS) (JLC) (S.D.N.Y. 2019), there was a 15-month production schedule where the plaintiff was seeking records relevant to a federal school safety commission formed in the wake of a school shooting. *See also Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (six month production schedule at rate of 500 pages per month); *Blakeney v. Fed. Bureau of Investigations*, No. 17-cv-2288 (BAH), 2019 WL 450678, at *2 (D.D.C. Feb. 5, 2019) (six month production schedule at rate of 500 pages per month); *Republican Nat'l Comm. v. United States Dep't of State*, No. 16-cv-486 (JEB), 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (ordering 500 pages per month despite there being more than 10,000 documents); *Middle East Forum v. United States Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185-86 (D.D.C. 2018) (ordering 500 pages per month, which resulted in a seven-month production schedule); *Citizens United v. U.S. Dep't of State*, No. 16-cv-67 (D.D.C.), Dkt. No. 17 at 3 (ordering 300 pages per month, which resulted in a production schedule of approximately one year); *Adhikaar v. U.S. Dep't of State*, No. 19-cv-5881 (GHW) (S.D.N.Y. 2019), Dkt. No. 41 (with respect to two different agencies, ordering a production rate that resulted in a many-month production schedule).[10]

Plaintiffs attempt to paint NIH as obstinate in this litigation. To the contrary, as demonstrated, the universe of documents at issue—both through Plaintiffs reasonably limiting their request and NIH removing unresponsive and duplicative documents—is now a manageable one. And it is simply a reality that NIH is unable to filter documents in the ways that Plaintiffs seek, but it is willing to employ the tools that it does have. Similarly, it is true that NIH did not agree to remove documents that were made available in a separate FOIA request to a different requester because the logistics of that would have been overwhelming—it would have required NIH to take the 378 pages identified by Plaintiffs, *see supra* at 2, and then manually compare them to the documents responsive to Plaintiffs' FOIA request.

---

[8] Of those pages removed from the pool to be produced, approximately 5,000 were removed as a result of the parties narrowing the communications at issue by excluding the communications related to the non-priority grants. Accordingly, Defendant submits that this is not "false progress," but progress that has negated more than 16 months of processing.

[9] This page count may decrease if NIH identifies additional duplicative or non-responsive documents.

[10] Plaintiffs state that they anticipate many of the documents "will contain little to nothing of value." As indicated by NIH's removal of many non-responsive records, NIH is only producing records that are responsive to *Plaintiffs'* FOIA request.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 6

       In short, the parties have made substantial progress in reducing the documents at issue from a pool of approximately 11,000 pages to one of approximately 2,100 pages. Now that the production schedule is well within the realm of those commonly ordered in this District, NIH submits that a production rate of 300 pages per month is only further justified. In essence, Plaintiffs' argument asks the Court to determine that the production rate it ordered when there were potentially 11,000 pages of documents at issue is now too slow in light of changed circumstances—those changed circumstances being that the pool of documents has been decreased by more than 80% such that productions will be completed all the more quickly. The Court should reject this argument.

       Accordingly, for these reasons, NIH respectfully requests that the Court maintain its previously ordered production rate of 300 pages per month.[11]

***

       We thank the Court for its consideration of this matter.

Sincerely,

/s/

Debra L. Greenberger

FIRST LOOK INSTITUTE, INC.
David S. Bralow
Victoria J. Noble, *admitted pro hac vice*

*Counsel for Sharon Lerner and First Look Institute, Inc.*

c.    Alexander Hogan, counsel for NIH, *by ECF*

---

[11] To the extent the Court alters the production rate, then NIH respectfully requests that any such alteration not take effect until the January 15 production date. To the extent NIH is ordered to implement a higher rate, it cannot do so with respect to a production that is only two weeks away. Additionally, NIH requests that the Court make explicit that, to the extent the 15th of a given month falls on a holiday or weekend, then its production must be made on the next business day.